FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV 04 2026

KEVIN P. WEIMER, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**PAULA FISHER,**
Plaintiff,

v.

**STEWART TITLE COMPANY,**
Defendant.

Civil Action No. 1:25-cv-01001-VMC-JEM

---

# PLAINTIFF'S SPECIFIC OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER AND FINAL REPORT AND RECOMMENDATION (DOC. 150), AND REQUEST TO RECEIVE SUPPORTING EVIDENCE

Plaintiff Paula Fisher submits specific objections under Federal Rule of Civil Procedure 72(a) to the nondispositive rulings identified below and under Rule 72(b) to the recommendation granting Stewart Title Company's Motion for Summary Judgment, Document 124. These objections address the dispositions of Documents 116, 122, 124, 126, 128, 129, and 133. Plaintiff requests receipt of the accompanying correspondence and declaration, correction of the discovery chronology, review of the identified discovery deficiencies, and deferral of dispositive adjudication pending narrowly limited discovery.

## I. Standards of review and principal objection

Under Rule 72(a), the District Court must modify or set aside a nondispositive ruling that is clearly erroneous or contrary to law. Under Rule 72(b)(3), the Court must determine de novo the specifically challenged portions of a recommended dispositive ruling and may receive further evidence or return the matter with instructions. Rule 16(b)(4) permits modification of a scheduling order for good cause. Rule 56(d) permits appropriate relief when a declaration identifies specified reasons why the nonmovant cannot present facts essential to oppose summary judgment. The requested discovery must be connected to particular material facts rather than an unspecified hope of finding favorable evidence. City of Miami Gardens v. Wells Fargo & Co., 931 F.3d 1274, 1286–87 (11th Cir. 2019). Plaintiff's principal objection concerns the relationship between the discovery rulings and the recommended judgment. The R&R accepts STC's categorical nonparticipation position, rejects discovery directed to the foundation for that position, and concludes that no useful contrary evidence can be discovered because STC did not participate. Doc. 150 at 5–7, 14, 17–18. She objects that the adequacy of the organization's inquiry and responses was specifically challenged, she pursued resolution before discovery closed, and the ruling does not adequately distinguish an answered question from a materially deficient answer.

## II. The correspondence requires a more complete assessment of diligence and conferral

Plaintiff objects to the factual account and resulting procedural conclusions at pages 3–4 and 7 of Document 150. The accompanying March correspondence is designated Exhibit B. The previously identified chambers correspondence is designated Exhibits A-1 through A-5. Together with Plaintiff's declaration, these materials establish the chronology on which she requests review.

### A. March 8: Plaintiff expressly requested telephone conferral

In her March 8 email titled "Discovery Deficiency," Plaintiff transmitted the letter titled "STC Deficiency Letter March 6, 2026.pdf" and wrote:

> ***"I am available Tuesday morning for a phone call to discuss and set up a date for a new witness."***

Ex. B, March 8 "Discovery Deficiency" email. A separate March 8 email concerning Mr. Phillips likewise requested a time to meet and confer Tuesday morning. Ex. B, March 8 "Mr. Phillips Deposition" email. These messages establish that Plaintiff sought an actual conference, rather than relying solely on sending a deficiency letter.

**B. March 9: Plaintiff followed up, and counsel proposed a specific conference time**

On March 9, Plaintiff asked counsel's paralegal whether counsel was available that week or the next and stated that she had not heard back. In a separate follow-up to counsel, Plaintiff identified the March 26 discovery deadline, requested confirmation whether STC would supplement, and sought a response concerning Mr. Phillips. Counsel responded:

***"I can confer Wednesday at 10 am."***

Counsel also stated that STC would object to Mr. Phillips's deposition. Ex. B, March 9 Gilroy response.

**C. Plaintiff accepted and identified the deficiencies to be discussed**

Plaintiff expressly accepted:

***"Wednesday at 10:00 a.m. works for me."***

She then identified the intended subjects: deficiencies in STC's written responses and the need for a properly prepared Rule 30(b)(6) witness. She separately requested confirmation whether STC opposed another corporate witness.

Counsel replied:

***"Yes STC objects to producing another witness"***

Ex. B, March 9 acceptance and Gilroy response.

Thus, before discovery closed, counsel had received the deficiency letter, a telephone conference had been arranged, and STC had expressly opposed the requested additional witness. That opposition did not itself eliminate the conferral requirement. It did, however, identify a concrete dispute requiring resolution.

**D. March 11: Plaintiff supplied her telephone number and sought a means to reach counsel**

On March 11, Plaintiff emailed counsel that she could be reached at the telephone number supplied in the message that morning.

Ms. Gilroy did **not** get on the call scheduled so Plaintiff emailed counsel's paralegal:

***"Do you have a number where I can reach Monica at for our 10 am call this morning?"***

Ex. B, March 11 correspondence. These messages corroborate Plaintiff's account that she was attempting to participate in the agreed conference. Her supporting declaration addresses the nonoccurrence of the call and the absence of a completed replacement conference before discovery closed. The Court should assess those facts before attributing the absence of completed telephone conferral to a failure by Plaintiff to seek or arrange it.

**E. The distinction between attempted and completed conferral must be preserved**

Plaintiff does not contend that emails automatically satisfy a requirement for telephone or in-person conferral. Nor does she ask the Court to treat a scheduled but uncompleted call as a completed conference. Her objection is that the procedural analysis does not adequately account for her documented requests, counsel's proposed time, her acceptance, the March 11 follow-ups, and the circumstances preventing completion. The proper question is whether those circumstances warranted a directed conference or a short opportunity to cure incomplete conferral before the disputed discovery was foreclosed and summary judgment recommended.

## III. The chambers chronology requires correction or clarification

The R&R states that Plaintiff requested a discovery conference on March 11, that chambers sought confirmation of conferral, and that STC responded "[l]ater that day." It then describes chambers acting after receiving no response from Plaintiff. Doc. 150 at 3–4. Plaintiff's March 11 request preceded the March 26 discovery deadline. Ex. A-1. However, the corresponding chambers inquiry and STC response displayed in Exhibits A-2 and A-3 are dated April 1. The ripeness communication and Plaintiff's response are dated April 3. Exs. A-4–A-5. Plaintiff requests examination of the complete messages and headers. If the R&R refers to

separate March 11 communications, those communications should be identified and distinguished from the April exchange. Plaintiff recognizes that the R&R acknowledges her subsequent response. Her objection concerns the dates, the response interval, and the incomplete treatment of her explanation—not an assertion that the R&R says she never responded. **Her April 3 message asserted pre-deadline conferral and impasse and described attempted calls and the scheduled March 11 conference.** The District Court should determine what telephone discussions actually occurred and distinguish those discussions from written exchanges and unsuccessful efforts to complete the scheduled conference. **The discrepancy matters because Plaintiff requested assistance while discovery remained open.** If the corresponding procedural response came after discovery closed, that circumstance bears on diligence, the opportunity to cure conferral deficiencies, and good cause for limited relief. Plaintiff does not contend that her request automatically suspended discovery or required an immediate ruling.

## IV. Document 116: The denial of limited reopening should be reconsidered on the complete record

Plaintiff objects to the denial of Document 116 at pages 4–7. The R&R relies on the amount of completed discovery and concludes that further subjects were already addressed, could have been addressed, or were immaterial. **Plaintiff**

**objects to applying those conclusions without adequately resolving the identified deficiencies in the responses actually received.**

### A. Asking a question does not necessarily establish that the organization answered it adequately

Rule 30(b)(6) requires testimony concerning information known or reasonably available to the organization. The R&R quotes Plaintiff asking which systems STC considered before denying Request for Admission No. 3. The quoted answer states that the representative did not understand the terminology, describes separate corporate roles, and explains that he was unsure of shared systems because STC was not involved. Doc. 150 at 6–7; Doc. 97-1 at 117:4–25. The answer does not, on its face, identify the systems actually considered before the denial. Plaintiff's objection is directed to that distinction. Similarly, the quoted answer concerning Request for Admission No. 4 repeats STC's nonparticipation position. Doc. 150 at 7; Doc. 97-1 at 119:2–11. Whether that answer rested on an adequate corporate inquiry was among the subjects Plaintiff sought to examine. Plaintiff does not contend that a representative must personally review every conceivable source or that any expression of uncertainty invalidates all corporate testimony. She requests examination of whether the organization supplied reasonably available information responsive to the particular noticed subjects and requests.

**B. The requested supplementation concerned an identified discrepancy and a witness identified through STC's testimony**

Plaintiff's requested discovery arose from specific evidence obtained during discovery. STGC produced the transaction-specific Stewart Connect approval bearing production identifier STGC000714 and reference UW134274. **That approval expressly required confirmation that the LLC buyer was in good standing in its state of incorporation.** The related over-limits instruction required underwriting email approval before proceeding.

Separately, Plaintiff presented federal records identifying STC in connection with Virtual Underwriter. STC's representative characterized that identification as a mistake. Plaintiff sought the factual basis for that explanation, including the distinction between ownership, platform administration, and responsibility for the underwriting functions relevant to her transaction.

STC's corporate testimony also identified Kyle Phillips as a person to consult concerning the intellectual-property matters underlying this discrepancy. Plaintiff thereafter sought his deposition and requested telephone conferral concerning both that examination and deficiencies in STC's corporate testimony. Counsel opposed Mr. Phillips's deposition and production of another corporate witness. Ex. B. This sequence supplied an identified evidentiary basis and a particular source for follow-up. Plaintiff was not requesting an unrestricted investigation based solely

on common corporate ownership. She sought to reconcile documentary identification of STC with its representative's contrary explanation and determine whether the underlying records illuminated responsibility for the underwriting resources and approval process used in her transaction. Mr. Phillips relevance concerned the factual foundation for STC's ownership explanation and identification of the appropriate records or knowledgeable personnel. Nonprivileged records or prepared corporate testimony could supply that information without requiring disclosure of privileged communications. The conclusion that these subjects "could have been addressed" during the initial deposition does not adequately resolve whether the testimony itself identified a need for follow-up that Plaintiff then pursued before discovery closed. Plaintiff requests a determination of the unanswered subjects and the appropriate means of obtaining responsive information before those subjects are dismissed as duplicative or immaterial.

**C. The proposed relief is limited and proportionate**

Plaintiff requests a 30-day period confined to:

1. Supplemental responses to the existing disputed requests concerning STC's transaction-related records and the factual basis for its denials;

2. Identification, through nonprivileged information, of relevant corporate sources and repositories actually consulted;
3. Clarification of any STC responsibility for the personnel or functions involved in the identified approval; and
4. One supplemental Rule 30(b)(6) examination, limited to unresolved material topics, with leave to the extent required by Rule 30(a)(2).

Any examination of Mr. Phillips should be evaluated separately for relevance, privilege, and whether responsive information can be obtained from records or another knowledgeable witness.

## V. Document 122: Incomplete conferral should be evaluated together with the documented efforts to complete it

Plaintiff objects to the denial of Document 122 at page 7. The R&R states that Plaintiff's April 22 motion and email acknowledged that the parties had not met and conferred. Plaintiff does not ask the District Court to disregard those statements or recast an uncompleted conference as completed. An acknowledgment that the required conference had not occurred **does not establish that Plaintiff failed to request, arrange, or attempt it.** Exhibit B documents each of those steps. The Court should consider whether the appropriate response was to direct a promptly scheduled telephone conference and require a concise joint statement of remaining disputes. **Denying the conference request because**

**conferral was incomplete, without addressing the documented circumstances of that incompletion, left the substantive deficiencies unresolved.** Plaintiff requests that the denial be set aside or modified to permit that limited process. Alternatively, she requests a determination whether her documented efforts warranted excusing incomplete conferral for purposes of presenting the identified disputes.

This request rests on the specific correspondence and procedural history, rather than pro se status alone.

## VI. Document 126: Deferral of adjudication is distinct from extension of a filing deadline

Plaintiff objects to the denial of Document 126 at pages 7–8. The R&R characterizes the motion as seeking to stay the summary-judgment filing deadline and notes that Plaintiff filed it after that deadline. Plaintiff requests consideration of the motion's actual request to hold STC deadlines in abeyance pending resolution of the discovery motions. To the extent Document 126 requested postponement of adjudication, expiration of the motion-filing deadline did not resolve that request. Regardless of the disposition of Document 126, Plaintiff separately submitted a Rule 56(d) declaration in Document 136. The Court should assess the requested deferral together with Documents 116, 122, and 136, rather than treating expiration of the filing deadline as resolving whether additional time

to obtain essential facts was warranted. Plaintiff does not contend that the pending motions automatically stayed proceedings or rendered STC's timely summary-judgment motion improper.

**VII. Document 124: The recommendation granting summary judgment <u>should not be adopted before proper assessment of the Rule 56(d) showing</u>**

Plaintiff specifically objects to the recommendation granting STC's Motion for Summary Judgment, Document 124.

**A. Page 14 relies on the proposition the requested discovery was intended to test**

The R&R concludes: *"[T]here is no such evidence to be discovered because STC was not involved in the transaction."* Doc. 150 at 14. Plaintiff objects to treating STC's substantive denial as sufficient to resolve whether discovery testing the foundation of that denial could yield material information. The relevant inquiry is whether Plaintiff identified particular essential facts, a grounded reason for seeking them, and diligent efforts to obtain them. Plaintiff requests application of that inquiry to Document 136, the original discovery requests, the quoted testimony, and the accompanying correspondence.

**B. The anticipated facts and their materiality are identifiable**

The requested information concerns:

1. The sources supporting categorical denials. Identification of the transaction-related sources actually examined could establish whether STC's position accounted for the relevant records and functions or omitted a responsive source.

2. **Responsibility for the specific approval.** Records identifying the employing entity and functional responsibilities of persons involved in the over-limits request and approval **could establish whether a relevant act or communication was attributable to STC.**

3. Transaction records within STC's possession, custody, or control. Responsive records could establish communications, knowledge, or involvement inconsistent with the categorical denials.

4. The material basis of the VU ownership explanation. Supporting records could clarify whether the discrepancy concerns Virtual Underwriter and Stewart Connect title underwriting alone or bears on a relevant operational responsibility.

The first three subjects bear on attribution, participation, and knowledge. The fourth warrants discovery only to the extent it has a demonstrated connection to those issues. **These subjects matter because they concern the reliability and completeness of the factual premises** used to recommend judgment.

### C. The discovery request should be evaluated against the claims actually pleaded

For Count I, Plaintiff must connect the requested facts to an actionable representation or concealment attributable to STC, the required knowledge and intent, justifiable reliance, and resulting harm. For Count III, corporate affiliation or parallel litigation positions alone do not establish a conspiracy. Plaintiff must identify concerted conduct connected to an actionable underlying tort. Plaintiff requests supplementation to address those specific requirements, not permission to substitute a new negligence claim for the pleaded causes of action.

## VIII. Document 124: Specific objections to the breadth of the accepted factual findings

Plaintiff objects to the use of the factual findings at pages 11–14 to resolve the claims at pages 17–21.

### A. Corporate structure does not independently resolve transaction-specific conduct

DSMF paragraphs 29–35 concern corporate governance, business practices, and Virtual Underwriter. Plaintiff does not dispute that STC and STGC are distinct entities merely because they share ownership or resources. Her objection is to treating those general propositions as independently resolving who performed, supervised, or communicated a particular transaction-related function. Separate corporate existence and transaction-specific participation are distinct questions.

Any liability must rest on conduct attributable to STC, not its membership in a corporate family. **Plaintiff's former employment within the Stewart Enterprise** supplies context only to the extent her declaration identifies personal observations relevant to the operational questions.

**B. The cited deposition passage does not identify the sources underlying the denials**

Plaintiff challenges the use of DSMF paragraphs 6, 8–10, 15–16, 19, and 21 to establish categorical nonparticipation, absence of relevant communications, and absence of representations. For the reasons stated in Section IV(A), the quoted testimony does not resolve Plaintiff's specific challenge to the corporate inquiry underlying those denials. The Court should assess the complete cited evidence, including Document 124-3, while separately resolving Plaintiff's specific challenge to the inquiry and supplementation.

**C. Local Rule 56.1 does not eliminate the need for evidentiary support**

Plaintiff recognizes that an assertion of incomplete discovery does not itself refute a supported fact. Nevertheless, deemed admissions do not dispense with determining whether the supporting materials establish the asserted facts and entitlement to judgment. United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, 363 F.3d 1099, 1101–02 (11th Cir. 2004). Plaintiff

requests particular examination of the nonparticipation findings because they are both dispositive and the subjects of the disputed discovery. Alternatively, she requests an opportunity under Rule 56(e)(1) to properly support or address the challenged assertions after resolution of the specified discovery.

## IX. Document 124: The conditional underwriting approval, STC's alleged operational role, and seller acknowledgments present distinct issues

Plaintiff objects to the treatment of her theory as resting solely on corporate affiliation and to any inference that the seller acknowledgments resolve the separate entity-verification issue. Doc. 150 at 11–13, 17–18. Plaintiff's theory concerns STC's alleged oversight and management of underwriting operations, including responsibility for personnel or functions involved in this transaction's approval process. She seeks to establish conduct attributable to STC, not liability merely because STC and STGC are affiliated. **Discovery produced by STGC identifies the transaction-specific Stewart Connect approval,** reference UW134274, production identifier STGC000714, containing the express condition:

***"Confirm the LLC buyer is in good standing in its state of incorporation."***

**The over-limits instruction separately required receipt of underwriting email approval before proceeding.** The transaction subsequently closed. The named buyer was not a legally existing Florida LLC and that the good-standing condition therefore could not have been satisfied as stated. These documents identify the

particular underwriting process that Plaintiff sought to examine. The unresolved questions include who processed and communicated the approval, who was responsible for confirming its condition, whether STC managed or supervised any relevant personnel or functions, and whether resulting conduct, knowledge, or omissions are attributable to STC. The approval does not independently establish those connections; it supplies a transaction-specific basis for the requested inquiry. Plaintiff therefore challenges the categorical nonparticipation findings insofar as they were accepted without adequate resolution of discovery directed to STC's alleged operational responsibilities. Whether STC conducted the closing and whether it performed or supervised another relevant function are distinct factual questions. Plaintiff further states that the approval was presented to her at closing and that she relied on the information conveyed in deciding to proceed. Her reliance contention concerns what was actually communicated, by whom, and under what circumstances—not an assertion that a conditional approval itself certifies fulfillment of its condition. The relevant evidence must establish the representation or omission, its attribution to STC, the required knowledge and intent, Plaintiff's justifiable reliance, and resulting injury. Finally, the seller acknowledgments quoted at page 12 concern transfer of ownership and the consequences of nonpayment of existing loans. Acceptance of those financing risks does not itself establish knowledge that the named buyer lacked legal existence or

that an underwriting condition remained unsatisfied. Those acknowledgments should be evaluated according to the risks they actually disclose, rather than treated as resolving the separate alleged entity-related misrepresentation or nondisclosure.

**X. Document 124: The FBPA claim requires separate consideration of potential public impact and attribution to STC**

Plaintiff specifically objects to both grounds stated at page 21: absence of STC involvement and absence of potential public impact. Plaintiff's public-impact theory concerns the alleged communication or implementation of underwriting approvals without fulfillment or disclosure of unsatisfied entity-verification conditions through a standardized process used in consumer real-estate transactions. The issue is whether the challenged practice could affect other consumers, not merely whether Plaintiff has identified another injured person. See Zeeman v. Black, 156 Ga. App. 82, 84–85 (1980). The approval evidence described in Section IX identifies the process at issue. The ownership discrepancy and witness referral described in Section IV(B) explain the outstanding attribution questions. For the FBPA claim, the additional issue is whether the challenged handling or communication of unsatisfied approval conditions reflected a standardized practice capable of affecting other consumers, rather than an occurrence unique to Plaintiff's transaction. Plaintiff does not rely on platform ownership or widespread use alone to establish deception. Those facts bear on the

commercial channel and allocation of responsibility. The requested discovery concerns whether the alleged communication or handling of unsatisfied approval conditions reflected a standardized practice capable of affecting other consumers and whether STC administered, supervised, or participated in that practice.

Plaintiff therefore objects to the categorical conclusion that the alleged conduct could not affect the consuming public without adequate consideration of the identified evidence and her requests to complete material discovery. She requests a separate assessment of potential public impact and STC attribution, together with limited supplementation of the existing discovery directed to those issues.

## XI. Document 124: Response to the proposed sua sponte disposition of litigation-related allegations

Plaintiff objects to the proposed disposition at pages 18–20 concerning FAC paragraphs 29 and 47. Plaintiff recognizes that footnote 4 identifies the R&R as notice of the proposed disposition. She does not contend that sua sponte summary judgment is categorically prohibited.

Rule 56(f) requires notice and a reasonable opportunity to respond. Plaintiff requests consideration of these objections as her response and, alternatively, a specifically scheduled, limited opportunity to address the grounds first identified in the R&R. Plaintiff does not contend that a statement allegedly misleading the

Court automatically constitutes fraud against her. A viable tort theory requires the applicable elements, including attribution, falsity, the required mental state, justifiable reliance, and resulting injury. Subsequent litigation statements cannot have caused losses already sustained before those statements.

The proposed disposition should therefore distinguish:

1. Any evidentiary failure concerning a particular statement and claimed reliance;
2. Any legal defect that additional discovery could not cure; and
3. The separate availability of a procedural remedy for litigation conduct.

Plaintiff requests additional response time only to address identified grounds and evidence, not an unrestricted opportunity to reformulate the claims. She does not ask the Court to presume the missing elements or treat the discovery dispute alone as proof of litigation fraud.

## XII. Document 128: The late-answer ruling should address the substantive request in Document 61

Plaintiff objects to the denial of Document 128 at pages 8–9. The Order acknowledges that Document 61 disputed good cause or excusable neglect and requested that the Court decline retroactive acceptance of STC's answer or provide alternative relief. It nevertheless states that neither party prompted further action.

Plaintiff objects to that characterization. **Document 61 requested judicial action** notwithstanding its caption as a response. The Court should distinguish compliance with the show-cause order from the legal basis for accepting the late answer. Rule 12(a)(4)(A) ordinarily supplies the response deadline following denial of a Rule 12 motion unless the Court sets another time. If a retroactive extension was necessary, Rule 6(b)(1)(B) supplies the excusable-neglect standard. Plaintiff requests consideration of the substantive request in Document 61 and clarification of the basis for accepting the answer. She recognizes that lateness alone neither entitled her to default judgment nor deprived STC of the ability to seek summary judgment. This objection is independent of, and does not replace, the discovery and merits objections.

**XIII. Document 129: STGC's dismissal does not categorically resolve <u>collateral sanctions relief</u>**

Plaintiff objects to the denial of Document 129 as moot solely because STGC was dismissed. Doc. 150 at 9, 22. Document 129 concerns alleged failure to produce a prepared Rule 30(b)(6) witness and enforcement of a discovery obligation. The Court should distinguish relief dependent on continued merits litigation against STGC from any collateral remedy concerning completed discovery conduct. Dismissal does not invariably eliminate authority to address collateral sanctions matters. The particular remedy, governing rule, and procedural prerequisites must

be examined. Plaintiff requests a remedy-specific ruling rather than categorical mootness based solely on party status.

**XIV. Document 133: Plaintiff does not seek reversal of the denial of STGC's <u>motion to strike</u>**

Document 150 also denies STGC's Motion to Strike, Document 133, as moot. Doc. 150 at 9, 22. She addresses Document 133 because its disposition accompanies the challenged mootness ruling on Document 129. If Document 129 is restored for consideration, Plaintiff requests adjudication of its merits and any properly presented threshold objections after an appropriate opportunity to respond. Nothing in the requested relief should be construed as granting STGC's motion to strike or accepting its arguments.

**<u>XV. Receipt of evidence and limited supplemental proceedings</u>**

Plaintiff expressly requests receipt of Exhibits A-1 through A-5, Exhibit B, and her supporting declaration. The correspondence bears directly on the chronology, conferral efforts, diligence, and procedural conclusions in Document 150. The March emails document a proposed conference, Plaintiff's acceptance, STC's opposition to another witness, and Plaintiff's efforts to complete the call. Plaintiff offers the messages as evidence of communications and efforts actually made. Her declaration supplies facts within her personal knowledge concerning the scheduled

call and subsequent events. To the extent these materials were previously transmitted to chambers and previously docketed in another motion, Plaintiff requests their inclusion in the record considered on these objections. She requests its consideration because it directly addresses the factual account underlying the challenged rulings.

## XVI. Requested relief

Plaintiff respectfully requests that the District Court:

1. Receive the accompanying correspondence and declaration and correct or clarify the discovery chronology;
2. Set aside or modify the denial of Document 116 after evaluating the identified deficiencies, diligence, materiality, and good cause for limited supplementation;
3. Set aside or modify the denial of Document 122 to permit a promptly scheduled conference with chambers and presentation of the remaining specific disputes, or excuse incomplete conferral based on the established circumstances;
4. Reconsider Document 126 to the extent it requested deferral of adjudication, and independently assess Document 136 under Rule 56(d);

5. Decline to adopt the recommendation granting Document 124 pending resolution of the identified essential discovery;
6. Permit 30 days of targeted supplementation and one limited supplemental Rule 30(b)(6) examination, followed by a supplemental summary-judgment response and corresponding factual submission;
7. Alternatively, permit appropriate support or correction of factual submissions under Rule 56(e)(1);
8. Provide a reasonable, specifically scheduled opportunity to address the newly identified sua sponte grounds if the Court determines that an additional response is warranted under Rule 56(f);
9. Review the denial of Document 128 and address Document 61's substantive request and the procedural basis for accepting STC's late answer;
10. Review Document 129 by distinguishing any surviving collateral remedy from relief dependent on continued merits litigation against STGC;
11. Recognize that Plaintiff does not seek reversal of the denial of Document 133; and
12. Resolve the specific objections, distinguishing procedural discovery grounds from findings that particular information was adequately supplied, immaterial, or unavailable as a matter of law.

Dated: November 1, 2026

Respectfully submitted,

/s/ Paula Fisher

Paula Fisher, Plaintiff pro se

**Certificate of Service**

I certify that on November 2, 2026 I served the foregoing objections and accompanying exhibits and declaration upon counsel of record for STC and STGC by email.

/s/ Paula Fisher

Paula Fisher

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV 04 2026

KEVIN P. WEIMER, Clerk
By: Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**PAULA FISHER,**
Plaintiff,

v.

**STEWART TITLE COMPANY,**
Defendant.

Civil Action No. 1:25-cv-01001-VMC-JEM

---

**DECLARATION OF PAULA FISHER CONCERNING DISCOVERY CONFERRAL**

I, Paula Fisher, declare:

1. I am the Plaintiff. The following statements concern communications I sent or received and events within my personal knowledge.
2. Exhibit B contains accurate copies of the displayed portions of emails I sent or received concerning STC discovery deficiencies, a supplemental corporate witness, and the proposed deposition of Mr. Phillips. The screenshots do not display every part of each email thread.
3. On March 8, 2026, I emailed Monica Gilroy, transmitted the letter titled "STC Deficiency Letter March 6, 2026.pdf," and requested a telephone conference for Tuesday morning.

4. I separately requested discussion of Mr. Phillips's deposition and asked whether counsel would accept service and produce him voluntarily.
5. On March 9, I followed up with counsel and her paralegal concerning availability. I expressly identified the March 26 discovery deadline.
6. Counsel responded that she could confer Wednesday at 10 a.m. I accepted that time and explained that I wished to discuss deficiencies in STC's written responses and the need for a properly prepared Rule 30(b)(6) witness.
7. Counsel separately stated that STC objected to producing another witness.
8. On March 11, the scheduled conference date, I emailed counsel my telephone number and availability that morning. I also emailed her paralegal seeking a number at which I could reach counsel for our 10 a.m. call.
9. The scheduled telephone conference did not occur. I did not receive a call from counsel for that conference.
10. I remained willing to confer. I did not decline to participate in the scheduled March 11 conference.
11. No replacement telephone conference concerning the deficiencies identified in that March correspondence was completed before discovery closed on March 26, 2026.

12. I requested assistance from chambers before discovery closed because the discovery disputes remained unresolved.

13. My contention is not that the emails themselves were a completed telephone conference. **They document my efforts to arrange and participate in one** and STC's stated opposition to the requested additional witness.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 2, 2026.

PFisher

Paula Fisher

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**PAULA FISHER,**
Plaintiff,

v.

**STEWART TITLE COMPANY,**
Defendant.

Civil Action No. 1:25-cv-01001-VMC-JEM

---

I, Paula Fisher, declare:

1. I am the Plaintiff in this action. The following statements are based on my personal knowledge unless expressly identified as my understanding or a statement another person made to me.
2. I previously worked for Stewart Title Company.
3. My understanding that STC exercised operational oversight concerning underwriting functions arose from the following activities or reporting relationships I personally observed while employed there.
4. I sought discovery to determine the actual allocation of responsibility for the relevant approval, personnel, and operational functions.

5. I used discovery in this action, including written requests and a corporate-representative deposition. My objection concerns material information I sought but did not obtain, rather than an assertion that no discovery occurred.
6. Exhibit A-1 is a true and accurate screenshot of the displayed portion of my March 11, 2026 email requesting guidance concerning STC discovery disputes before the March 26 deadline.
7. Exhibits A-2 through A-5 are true and accurate screenshots of the displayed portions of the April 1 and April 3 correspondence concerning that request.
8. On **April 3, I expressly advised chambers that I had pursued conferral and reached an impasse before discovery closed.** I described my earlier efforts, STC's stated position, and the scheduled March 11 call that did not occur. My email accurately reported my understanding of those events.
9. **I repeatedly sought assistance concerning unresolved discovery. I understood the Court's procedure to require a conference before a motion to compel could be filed, and I attempted to obtain access to that procedure.**
10. The transaction-specific underwriting approval containing the LLC good-standing condition was presented to me in connection with the closing. I relied on that approval in deciding to proceed. Had I known that the

condition remained unsatisfied and the named buyer lacked the represented legal status, I would not have agreed to proceed on that basis.

11. During the period in which I was pursuing discovery, I received statements asserting that I would not obtain discovery and invoking Mark Neubauer's alleged federal-court connections.

12. I raised Neubauer's involvement with Dylan Magruder. He advised me that Neubauer was not involved in the litigation.

13. I do not have personal knowledge that Neubauer influenced the Court or any discovery ruling. I report the statements because I received them during my efforts to obtain discovery and wish to preserve an accurate account.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 2, 2026

P. Fisher

Paula Fisher

## Exhibit List and Order

### Exhibit A

**A-1:** March 11 request

**A-2:** April 1 chambers inquiry

**A-3:** April 1 Gilroy response

**A-4:** April 3 chambers ripeness message

**A-5:** Your April 3 correction

### Exhibit B

1. March 8 deficiency-letter transmittal and telephone request.
2. March 8 Mr. Phillips deposition email.
3. March 9 availability inquiry to Kristy.
4. March 9 follow-up identifying the discovery deadline.
5. Gilroy's March 9 proposal to confer Wednesday at 10 a.m.
6. Your March 9 acceptance identifying the discussion topics.
7. Gilroy's opposition to another witness.
8. March 11 message supplying your telephone number.
9. March 11 inquiry seeking counsel's number for the scheduled call.

# Exhibit A

**A-1:** March 11 request

**A-2:** April 1 chambers inquiry

**A-3:** April 1 Gilroy response

**A-4:** April 3 chambers ripeness message

**A-5:** Your April 3 correction

**Subject** 1:25-cv-1001 Request for Guidance – Stewart Title Company Discovery Dispute

**From** paula fisher <paula10000@yahoo.com>

**To:** gandsm_jem_chambers@gand.uscourts.gov <gandsm_jem_chambers@gand.uscourts.gov>

**Cc:** Monica Gilroy <monica.gilroy@gilroyfirm.com>, aproctor@carltonfields.com <aproctor@carltonfields.com>, dmagruder@carltonfields.com <dmagruder@carltonfields.com>, eaglespass@yahoo.com <eaglespass@yahoo.com>

**Date** Mar 11 at 10:56 AM

Good afternoon,

I write to request guidance regarding unresolved discovery disputes with Defendant Stewart Title Company ("STC") as the March 26 discovery deadline approaches.

I served STC with a detailed deficiency letter identifying several material issues in STC's written discovery responses and Rule 30(b)(6) testimony and requesting prompt supplementation and a limited supplemental deposition. (attached for the Court's convenience).

Despite that request, STC has stated it objects to producing an additional witness.

The principal disputes concern:

1. Inadequate basis for verified discovery responses.

STC served interrogatory responses verified by its Rule 30(b)(6) witness, Sean O'Callaghan, yet he testified that he did not review several core categories of information and did not consult departments reasonably expected to possess responsive information, raising questions about whether STC's responses were based on a reasonable inquiry.

2. Service-related communications central to Plaintiff's

claims.

STC admitted that Mr. O'Callaghan sent Plaintiff an email

STC admitted that Mr. O'Callaghan sent Plaintiff an email stating that Stewart Title Guaranty Company ("STGC") would accept service if STC were dismissed. However, STC's interrogatory responses state it has no information identifying who he communicated with in making that statement. Those communications are directly relevant because STGC later sought default-related relief and subsequently moved to set aside that default in this action.

3. Incomplete searches underlying "no records" responses.

STC's written discovery responses state that no responsive phone records, call logs, or related communications exist. However, Mr. O'Callaghan testified that key sources—including STC's headquarters phone line and litigation inbox—had not been searched before those responses were served. STC's counsel also suggested that Plaintiff could subpoena STC's phone records. Those records appear to be within STC's possession, custody, or control and should be produced by STC rather than requiring Plaintiff to pursue third-party subpoenas for materials directly relevant to notice and damages in this case.

4. Improper reliance on "not a participant" objections.

STC has relied on the position that it was "not a participant in Plaintiff's transaction" to avoid discovery on corporate systems and platform governance issues, including the Virtual Underwriter® platform referenced in STC testimony and Stewart's public filings.

5. Need for limited additional testimony.

Plaintiff requested a short supplemental Rule 30(b)(6) deposition and a brief deposition of Kyle Phillips concerning these issues, including the corporate knowledge surrounding the Virtual Underwriter platform and the service-related communications discussed above. STC has refused to produce another witness.

In addition, sworn testimony from STC's corporate representative states that the registration of the Virtual Underwriter Platform to STC was a "mistake," while Federal Government USPTO filings submitted through

counsel represent that the mark was properly registered to STC following reasonable inquiry. Limited testimony is necessary to clarify the factual basis for STC's discovery positions regarding that platform and related corporate records.

records.

Because these disputes affect both written discovery and corporate testimony, Plaintiff respectfully requests guidance from chambers regarding how the Court would like these disputes presented so they may be addressed before discovery closes on March 26.

Because these issues affect the completeness of STC's discovery responses and the adequacy of its corporate testimony, Plaintiff is concerned that without prompt guidance the remaining discovery period may close before these disputes can be meaningfully resolved.

Thank you for the Court's guidance.
Respectfully,

Paula Fisher

Plaintiff

---

1 Attachment

STC Deficiency Letter March 6, 2026.pdf

**Subject** RE: 1:25-cv-1001 Request for Guidance – Stewart Title Company Discovery Dispute

**From** GANDsm_JEM_Chambers <GANDsm_JEM_Chambers@gand.uscourts.gov>

**To:** paula fisher <paula10000@yahoo.com>, Monica Gilroy <monica.gilroy@gilroyfirm.com>

**Date** Apr 1 at 2:27 PM

Ms. Fisher,

Before bringing any discovery dispute to the Court's attention, the parties must have met and conferred on the dispute(s) either in person or over the phone and they must have reached an impasse. Please confirm whether those requirements have been met.

Ms. Gilroy, please provide STC's position.

Thank you.

**Chambers of Hon. J. Elizabeth McBath**
**United States Magistrate Judge**
United States District Court, Northern District of Georgia
75 Ted Turner Drive, SW, Suite 1854
Atlanta, GA 30303

Show trimmed content

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**Subject** RE: 1:25-cv-1001 Request for Guidance – Stewart Title Company Discovery Dispute

**From** Monica Gilroy <monica.gilroy@gilroyfirm.com>

**To:** GANDsm_JEM_Chambers <GANDsm_JEM_Chambers@gand.uscourts.gov>, paula fisher <paula10000@yahoo.com>

**Cc:** Kristy J. Baker <Kristy.Baker@gilroyfirm.com>

**Date** Apr 1 at 4:41 PM

Good afternoon. Ms. Fisher and I need to talk and confer on both her discovery deficiency letter to my client and my client's discovery deficiency letter to her.

My client is also planning on filing for summary judgment or reconsideration of the Court's prior denial of the Motion to Dismiss Stewart Title Company in light of the dismissal of STGC from the case.

Thank you for your assistance. We will wait for guidance from the Court.

Respectfully,

Monica Gilroy

Show trimmed content

| | |
|---|---|
| **Subject** | RE: 1:25-cv-1001 Request for Guidance – Stewart Title Company Discovery Dispute |
| **From** | GANDsm_JEM_Chambers <GANDsm_JEM_Chambers@gand.uscourts.gov> |
| **To:** | Monica Gilroy <monica.gilroy@gilroyfirm.com>, paula fisher <paula10000@yahoo.com> |
| **Cc:** | Kristy J. Baker <Kristy.Baker@gilroyfirm.com> |
| **Date** | Apr 3 at 10:50 AM |

Thank you, Ms. Gilroy.

Based on that representation, it appears that there are no disputes ripe for the Court's consideration at this time. If the parties reach an impasse after meeting and conferring on their disputes, then the parties may request a conference with the Court.

**Chambers of Hon. J. Elizabeth McBath**
**United States Magistrate Judge**
United States District Court, Northern District of Georgia
75 Ted Turner Drive, SW, Suite 1854
Atlanta, GA 30303

Show trimmed content

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**Subject** 1:25-cv-1001 – Meet-and-Confer Status Regarding STC Discovery Disputes

**From** paula fisher <paula10000@yahoo.com>

**To:** GANDsm_JEM_Chambers <gandsm_jem_chambers@gand.uscourts.gov>

**Cc:** Monica Gilroy <monica.gilroy@gilroyfirm.com>

**Bcc:** paula fisher <paula10000@yahoo.com>

**Date** Apr 3 at 10:51 AM

Good morning,

I confirm that we met and conferred regarding the STC discovery disputes and reached an impasse before the close of discovery.

I initiated meet-and-confer efforts as early as January 9, 2026, including a detailed deficiency email requesting supplementation, and continued those efforts through communications and attempted calls on February 11, March 9, and March 11, 2026.

On March 9, 2026, STC confirmed it would not produce another witness and maintained that it had no responsive documents. After a scheduled call did not occur on March 11, I advised defense counsel that I would be contacting chambers. I received no further communication from STC before discovery closed on March 26, 2026.

Based on STC's position that it had no responsive materials, I pursued a subpoena to SISCO to obtain the same categories of discovery.

Despite my good-faith efforts, these issues were not resolved, and I was unable to obtain discovery directly relevant to my claims before the close of discovery.

Accordingly, the suggestion that further meet-and-confer is required does not accurately reflect our history.

Earlier this week I submitted a motion to reopen and extend discovery as to Stewart Title Company, which is awaiting docketing.

For context, I am forwarding below January 9, 2026 correspondence reflecting that these issues—including SISCO/affiliate materials and documents within STC's possession, custody, or control—were raised well before the close of discovery.

Respectfully,

Paula Fisher

Begin forwarded message:

Show trimmed content

**Exhibit B**

10. March 8 deficiency-letter transmittal and telephone request.

11. March 8 Mr. Phillips deposition email.

12. March 9 availability inquiry to Kristy.

13. March 9 follow-up identifying the discovery deadline.

14. Gilroy's March 9 proposal to confer Wednesday at 10 a.m.

15. Your March 9 acceptance identifying the discussion topics.

16. Gilroy's opposition to another witness.

17. March 11 message supplying your telephone number.

18. March 11 inquiry seeking counsel's number for the scheduled call.

| | |
|---|---|
| **Subject** | Discovery Deficiency |
| **From** | paula fisher <paula10000@yahoo.com> |
| **To:** | Monica Gilroy <monica.gilroy@gilroyfirm.com> |
| **Cc:** | Paula Fisher <eaglespass@yahoo.com> |
| **Date** | Mar 8 at 4:35 PM |

Hi Monica-

Please see attached letter. I am available Tuesday morning for a phone call to discuss and set up a date for a new witness. I am also going to be deposing Mr. Phillips and would like to discuss availability for his deposition.

Please let me know what time works for you Tuesday morning.

Thank you,

Paula Fisher

---

1 Attachment

STC Deficiency Letter March 6, 2026.pdf

Date: March 6, 2026

Subject: Deficiencies in STC's Discovery Responses and Request for Prompt Cure / Meet-and-Confer

Hello Monica,

I write regarding several material deficiencies in Stewart Title Company's discovery responses and Rule 30(b)(6) deposition testimony. In light of the March 26 discovery deadline, I am requesting prompt supplementation and a short meet-and-confer so these issues can be addressed without Court intervention if possible.

After reviewing STC's written discovery responses together with the testimony of STC's designated Rule 30(b)(6) witness, Sean O'Callaghan, there appear to be significant gaps between the absolute positions taken in writing and the limited preparation and search described at deposition. These issues are not minor. They go directly to the adequacy of STC's search, the factual basis for its verified discovery responses, and whether STC produced a properly prepared corporate designee.

The principal deficiencies are below.

**1. Inadequate factual basis for verified discovery responses -** STC served interrogatory responses verified by Mr. O'Callaghan, yet at deposition he testified in substance that counsel prepared the discovery responses and that he did not review core categories of policies or procedures bearing on the noticed topics, including complaint handling, entity verification, internal routing, and title-search-related standards. He also testified that he did not speak with personnel from compliance, IT, records, SISCO, STGC, or other departments that would reasonably be expected to possess responsive information on several of the designated subjects.

That testimony raises a serious question whether STC's interrogatory answers and related written responses were based on a reasonable inquiry from reasonably available information, as required.

**2. Interrogatory responses concerning service-related communications are facially incomplete -** STC admitted that Mr. O'Callaghan sent Plaintiff an email offering that STGC would accept service if STC were dismissed. Yet in response to interrogatories seeking the factual basis for that arrangement, including the persons with whom Mr. O'Callaghan communicated to reach or convey that position, STC responded that it had "no information responsive" or otherwise provided no meaningful factual identification. That answer is facially deficient. If STC's designee communicated an offer regarding service on behalf of a related entity, STC must identify the non-privileged factual basis for that statement, including whether Mr. O'Callaghan consulted anyone, when the communication occurred, and the general subject of the communication. To the extent STC contends responsive communications are privileged, privilege does not relieve STC of its obligation to disclose the underlying non-privileged facts. The existence of a logged communication only underscores the deficiency in STC's interrogatory response; it does not supply the missing factual answer.

**3. STC's written "no records" positions are contradicted by the deposition testimony concerning the actual search performed** - STC's written responses take broad positions that no responsive phone logs, call-routing records, notes, or related materials exist, or that STC is unaware of any such communications. However, Mr. O'Callaghan testified that he did not search the headquarters main line before those responses were served and, when questioned, indicated that such a search could be performed if the number were provided. He likewise testified that the litigation inbox is monitored and that emails are forwarded as they come in, but he did not establish that a complete search of that source had in fact been performed before STC denied the existence of responsive materials.

Those answers therefore appear to have been served without a complete search of obvious custodians and sources. STC should not maintain absolute "none" or "no records" responses while its own Rule 30(b)(6) witness admits that key sources were not searched.

Moreover, the suggestion that Plaintiff should instead subpoena STC's phone records does not resolve the deficiency. Under Rule 34, STC is required to produce documents within its possession, custody, **or control**, including records maintained by third-party vendors where STC has the practical ability to obtain them in the ordinary course of business. If responsive call records are maintained through STC's telecommunications provider or internal phone systems, STC must produce those records.

Because Plaintiff's communications with STC concerning the transaction and resulting title issues go directly to notice and damages—including whether STC had an opportunity to address or cure the defect—STC must conduct a reasonable search of its phone systems and related records before maintaining "no records" responses.

Mr. O'Callaghan's Rule 30(b)(6) testimony indicates that such searches had not been completed when STC's discovery responses were served. That concern is heightened because Mr. O'Callaghan personally verified STC's interrogatory responses, yet testified that he had not reviewed key categories of information and had not consulted multiple departments likely to possess responsive facts, raising serious questions about whether STC's responses were based on a reasonable inquiry.

**4. STC's responses improperly use "not a participant in Plaintiff's transaction" to avoid broader corporate, systems, and control topics** - A number of STC's responses to interrogatories, requests for admission, and requests for production rely on the refrain that STC "was not a participant in Plaintiff's transaction." That objection does not justify refusing to answer broader topics concerning STC's own systems, records, platform ownership or custodianship, enterprise reporting, or the factual basis for positions STC itself has taken in this litigation.

This concern is especially acute with respect to the Virtual Underwriter® platform. Mr. O'Callaghan testified that the system provides underwriting guidance to agents issuing STGC title policies, yet also acknowledged that Stewart Title Company was historically listed as the applicant or owner of the Virtual Underwriter mark in USPTO records before later being characterized as an error.

At the same time, Stewart's public SEC filings reference Virtual Underwriter as a Stewart enterprise product and describe operations on a consolidated basis across Stewart Information Services Corporation and its subsidiaries.

Given those facts, STC cannot rely on a narrow "not a participant" objection to avoid discovery concerning:

• STC's historical ownership or custodianship of Virtual Underwriter

• the administration or governance of that platform

• the internal records relating to its registration and operation

• and the relationship between STC, STGC, and enterprise systems referenced in Stewart's public filings.

These topics go directly to the factual positions STC has taken in discovery and the corporate structure reflected in the public record.

**5. STC failed to produce a properly prepared Rule 30(b)(6) witness on the noticed topics -** Mr. O'Callaghan's testimony showed that he was not prepared from reasonably available information on multiple noticed subjects, including:

• the factual basis for STC's written responses

• complaint receipt, routing, and internal handling

• searches for phone records and main-line communications

• litigation inbox handling and related searches

• STC's role, knowledge, custodianship, and historical ownership or registration issues concerning Virtual Underwriter

• and STC's relationship to broader enterprise systems and reporting topics that STC placed at issue in its written responses.

Where a corporation designates a Rule 30(b)(6) witness, it must prepare that witness to testify about information reasonably available to the organization. The testimony here reflects substantial preparation gaps.

To avoid burdening the Court, I request that STC do the following:

**1. Supplement Interrogatory Responses**

Supplement the interrogatories at issue to provide complete, non-evasive answers, including:

• the factual basis for Mr. O'Callaghan's service-related communications and any non-privileged facts concerning who he consulted

• identification of all custodians, departments, and data sources consulted in preparing STC's responses

• clarification of any answer that currently states STC has "no information," "none," or "no responsive documents" where the deposition showed the inquiry was incomplete.

**2. Supplement Requests for Production Responses**

Produce or confirm a completed search of:

• headquarters/main-line phone records and call-routing sources

• litigation inbox materials and related forwarding or routing records

• complaint receipt and internal routing communications

• Virtual Underwriter custodianship, ownership/registration history, administration, manuals and related internal records

• and the non-privileged documents supporting the factual positions STC has taken in this case on these subjects.

If STC contends any responsive materials are withheld on privilege grounds, please provide a privilege log sufficient to evaluate that claim.

**3. Confirm Preservation and Control**

Confirm in writing:

• what phone, email, inbox, routing, and platform-related systems were searched

• what retention periods apply

• what systems are within STC's possession, custody, or control, including vendor-maintained systems accessible to STC in the ordinary course

• and what preservation steps were taken.

**4. Provide Dates for a Supplemental Rule 30(b)(6) Deposition**

Provide dates for a limited supplemental Rule 30(b)(6) deposition, at STC's expense, on the following topics:

• the factual basis for STC's verified interrogatory responses and denials

• the scope of STC's searches for phone, inbox, routing, and complaint-handling materials

• Virtual Underwriter ownership, custodianship, administration, registration history, and related STC knowledge

• and STC's factual basis for its positions concerning enterprise systems or reporting to the extent asserted in discovery responses.

Please let me know by Tuesday March 10, 2026 whether STC will supplement. I am available Tuesday to meet and confer to get a date scheduled for the Supplemental Deposition.

Because discovery closes March 26 and these issues affect both written discovery and Rule 30(b)(6) adequacy, I need to move promptly. Absent prompt supplementation, STC's current positions may prevent meaningful resolution of these issues before discovery closes. If STC does not agree to cure these deficiencies immediately, I will seek guidance from chambers under the Court's discovery-dispute procedure.

I hope that will not be necessary and that STC will instead correct the record promptly.

Regards,

/s/ Paula Fisher

Paula Fisher

Plaintiff, pro se

**Subject** Mr. Phillips Deposition

**From** paula fisher <paula10000@yahoo.com>

**To:** Monica Gilroy <monica.gilroy@gilroyfirm.com>, Kristy J. Baker <kristy.baker@gilroyfirm.com>, Paula Fisher <eaglespass@yahoo.com>

**Date** Mar 8 at 6:18 PM

Good evening Monica-

Because Mr. Phillips was identified in sworn Rule 30(b)(6) testimony as the current in-house attorney handling intellectual-property matters for the Stewart Family of Companies and as a likely custodian for enforcement activity concerning Virtual Underwriter, I am noticing his deposition through counsel and request confirmation whether counsel will accept service and produce him voluntarily. Let's set up a time to meet and confer Tuesday morning to get a date locked down.

Thank you,
Paula Fisher

---

1 Attachment

STC Depo Kyle Phillips .pdf

**THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

PAULA FISHER,

Plaintiff,

v. **Civil Action No. 1:25-cv-01001**

STEWART TITLE COMPANY, et al.,

Defendants.

______________________________________/

**Notice of Deposition of Kyle Phillips Concerning Virtual Underwriter and Intellectual Property Matters for the Stewart Family of Companies**

Plaintiff Paula Fisher hereby notices the deposition upon oral examination of Kyle Phillips pursuant to Rules 30 and 30(b)(1) of the Federal Rules of Civil Procedure.

The deposition will be taken by remote video conference via Zoom on March 16, 2026, at 10 am, or on another mutually agreeable date and time during the week of March 16, 2026, including March 17, 18, 19, or 20, within the discovery period.

The deposition will be recorded stenographically and may also be recorded by audiovisual means.

Deponent: Kyle Phillips

Method: Remote video deposition by Zoom

Estimated Length: Up to 7 hours on the record, subject to the Federal Rules and any stipulation or Court order.

**Factual Basis for Deposition**

Stewart Title Company's designated Rule 30(b)(6) witness, Sean O'Callaghan, testified that the listing of Stewart Title Company as owner of VIRTUAL UNDERWRITER was allegedly a "mistake," identified Mr. Kyle Phillips as the in-house counsel now handling intellectual property matters for the "Stewart companies", and further testified that the best custodian for enforcement activity concerning the mark is Mr. Phillips.

In addition, the December 16, 2024 Combined Declaration of Use and Incontestability under Sections 8 and 15 continues to identify Stewart Title Company as the current and proposed owner of VIRTUAL UNDERWRITER. That filing also identifies multiple Baker Botts attorneys, including Tyler Beas as current attorney and Paul Reilly as proposed attorney, along with **several other appointed attorneys.** The declaration further states that the **factual assertions are made after a reasonable inquiry and includes the standard federal warning regarding false statements under 18 U.S.C. § 1001.**

These subjects were identified during sworn Rule 30(b)(6) testimony and relate to the ownership, governance, and **public representations** concerning the Virtual Underwriter platform.

These issues also bear on the **accuracy of public statements concerning the Virtual Underwriter platform, including information reflected in repeated filings made with the Securities and Exchange Commission.**

**Scope of Examination**

This deposition seeks non-privileged factual information identified during the Rule 30(b)(6) testimony of Stewart Title Company.

Plaintiff will examine Mr. Phillips on non-privileged facts within his knowledge, including:

1. His current title, role, and responsibilities concerning intellectual property matters for Stewart Title Company, Stewart Title Guaranty Company, Stewart Information Services Corporation, and/or the Stewart family of companies.
2. The VIRTUAL UNDERWRITER trademark and platform, including:
    - trademark ownership history,
    - maintenance of the USPTO registration,

- the identity of persons or entities responsible for maintaining the registration,
- the identity of persons or entities responsible for correcting any claimed ownership error,
- and the current status of any correction, reassignment, amendment, or internal review.

3. Non-privileged facts concerning why Stewart Title Company was publicly identified in USPTO records as owner/applicant of the VIRTUAL UNDERWRITER mark while Stewart Title Guaranty Company has been identified by Defendants as the entity operating or administering the platform.

4. The identity of the Stewart entity or personnel responsible for:
   - governance of the Virtual Underwriter platform,
   - content governance,
   - ownership or custodianship of related intellectual property,
   - maintenance of public-facing records concerning the same,
   - and correction of any mismatch between trademark ownership, platform operation, and public reporting.

5. Non-privileged facts concerning any TTAB or other enforcement proceedings involving the VIRTUAL UNDERWRITER mark, including custodians of related records.
6. The December 16, 2024 Combined Declaration of Use and Incontestability under Sections 8 and 15 for Registration No. 5707214 / Serial No. 87751744, including:
   - the identification of Stewart Title Company as owner,
   - the signatory,
   - the attorneys listed on the filing,
   - the factual basis for the ownership statements made in that submission,
   - and any steps taken after that filing to review, confirm, or correct ownership.
7. The identity of custodians and repositories likely to contain non-privileged documents concerning the ownership, governance, registration, maintenance, administration, or enforcement of the VIRTUAL UNDERWRITER mark and platform.
8. Non-privileged facts regarding any relationship between Stewart Title Company, Stewart Title Guaranty Company, and Stewart Information Services Corporation as to the ownership, reporting, governance,

administration, revenue generation, or public reporting of Virtual Underwriter.

9. Non-privileged facts concerning information relating to Virtual Underwriter that is reported, incorporated, described, or reflected in filings made to the Securities and Exchange Commission, including the identity of the Stewart entity or personnel responsible for supplying or verifying such information for SEC reporting purposes.

The examination is limited to non-privileged factual matters and does not seek attorney-client communications, legal advice, or attorney work product.

Dated: March 6, 2026

Paula Fisher

Plaintiff, pro se

**CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2026, I served the foregoing Notice of Deposition of Kyle Phillips Concerning Virtual Underwriter and Intellectual Property Matters for the Stewart Family of Companies upon counsel of record as follows:

**Amanda D. Proctor and Dylan Magruder**

Carlton Fields. PA

1230 Peachtree Street NE Suite 900

Atlanta, GA 30309

**Counsel for Defendants Stewart Title Guaranty Company**

**Monica K. Gilroy**
The Gilroy Firm
1145 Hightower Trail
Atlanta, GA 30350

**Dated: March 8, 2026**

Respectfully submitted,

/s/ Paula Fisher

Paula Fisher, Plaintiff

Service was made pursuant to Fed. R. Civ. P. 5(b).

**Subject** Re: Mr. Phillips Deposition

**From** paula fisher <paula10000@yahoo.com>

**To:** Monica Gilroy <monica.gilroy@gilroyfirm.com>, Kristy J. Baker <kristy.baker@gilroyfirm.com>, Paula Fisher <eaglespass@yahoo.com>

**Date** Mar 9 at 11:29 AM

Good morning Kristy-

Is Monica available this week or next? I have not heard back from her.

Thank you, Paula Fisher

Show trimmed content

**Subject** Re: Discovery Deficiency

**From** paula fisher <paula10000@yahoo.com>

**To:** Monica Gilroy <monica.gilroy@gilroyfirm.com>, Kristy J. Baker <kristy.baker@gilroyfirm.com>

**Cc:** Paula Fisher <eaglespass@yahoo.com>

**Date** Mar 9 at 11:37 AM

Good morning Monica,

Following up on Plaintiff's deficiency letter and the noticed deposition of Mr. Phillips. I also emailed your paralegal, Kristy, regarding availability but have not yet received a response.

Because discovery closes March 26 and your March leave further narrows the available window, please confirm whether STC will supplement and whether counsel will accept service and produce Mr. Phillips voluntarily.

Thank you,

Paula Fisher

Show trimmed content

**Subject** Re: Discovery Deficiency

**From** Monica Gilroy <monica.gilroy@gilroyfirm.com>

**To:** paula fisher <paula10000@yahoo.com>

**Cc:** Kristy J. Baker <Kristy.Baker@gilroyfirm.com>, Paula Fisher <eaglespass@yahoo.com>

**Date** Mar 9 at 11:47 AM

Hi Paula. I am Out of state on a family vacation. I can confer Wednesday at 10 am. Also STC will be objecting to the deposition of Mr Phillips and sending you a discovery response deficiency too.
Thanks and let me know if Wednesday works.

Thanks
Sent from my iPhone

> On Mar 9, 2026, at 11:37 AM, paula fisher <paula10000@yahoo.com> wrote:
>
> Good morning Monica,
>
> Following up on Plaintiff's deficiency letter and the noticed deposition of Mr. Phillips. I also emailed your paralegal, Kristy, regarding availability but have not yet received a response.
>
> Because discovery closes March 26 and your March leave further narrows the available window, please confirm whether STC will supplement and whether counsel will accept service and produce Mr. Phillips voluntarily.
>
> Thank you,
>
> Paula Fisher
>
> On Sunday, March 8, 2026, 4:35 PM, paula fisher

<paula10000@yahoo.com> wrote:

Hi Monica-

Please see attached letter. I am available Tuesday morning for a phone call to discuss and set up a date for a new witness. I am also going to be deposing Mr. Phillips and would like to discuss availability for his deposition.

Please let me know what time works for you Tuesday morning.

Thank you,

Paula Fisher

**Subject** Re: Discovery Deficiency

**From** paula fisher <paula10000@yahoo.com>

**To:** Monica Gilroy <monica.gilroy@gilroyfirm.com>

**Cc:** Kristy J. Baker <Kristy.Baker@gilroyfirm.com>, Paula Fisher <eaglespass@yahoo.com>

**Date** Mar 9 at 12:39 PM

Hi Monica,

Wednesday at 10:00 a.m. works for me.

I look forward to discussing the discovery deficiencies outlined in the letter I sent to STC, including resolution of the deficiencies in STC's written responses and the need for a properly prepared Rule 30(b)(6) witness.

Please confirm today whether STC objects to producing an additional Rule 30(b)(6) witness as requested in that letter.

I understand from your email that STC intends to object to the noticed deposition of Mr. Phillips. The deposition has already been noticed and discovery closes March 26; your position is noted.

Thank you.

Paula Fisher

Show trimmed content

**Subject** Re: Discovery Deficiency

**From** Monica Gilroy <monica.gilroy@gilroyfirm.com>

**To:** paula fisher <paula10000@yahoo.com>

**Cc:** Kristy J. Baker <Kristy.Baker@gilroyfirm.com>, Paula Fisher <eaglespass@yahoo.com>

**Date** Mar 9 at 12:50 PM

Yes STC objects to producing another witness
Sent from my iPhone

> On Mar 9, 2026, at 12:40 PM, paula fisher <paula10000@yahoo.com> wrote:
>
> Hi Monica,
>
> Wednesday at 10:00 a.m. works for me.
>
> I look forward to discussing the discovery deficiencies outlined in the letter I sent to STC, including resolution of the deficiencies in STC's written responses and the need for a properly prepared Rule 30(b)(6) witness.
>
> Please confirm today whether STC objects to producing an additional Rule 30(b)(6) witness as requested in that letter.
>
> I understand from your email that STC intends to object to the noticed deposition of Mr. Phillips. The deposition has already been noticed and discovery closes March 26; your position is noted.
>
> Thank you.
>
> Paula Fisher
>
> On Monday, March 9, 2026, 11:47 AM, Monica Gilroy <monica.gilroy@gilroyfirm.com> wrote:
>
> Hi Paula, I am Out of state on a family vacation. I can

**Subject** Re: Discovery Deficiency

**From** paula fisher <paula10000@yahoo.com>

**To:** Monica Gilroy <monica.gilroy@gilroyfirm.com>

**Date** Mar 11 at 9:21 AM

Good morning Monica-

I can be reached at 239-989-8801 this morning.

Thank you, Paula

Sent from Yahoo Mail for iPhone

Show trimmed content

**Subject** Re: Discovery Deficiency

**From** paula fisher <paula10000@yahoo.com>

**To:** Monica Gilroy <monica.gilroy@gilroyfirm.com>, Kristy J. Baker <kristy.baker@gilroyfirm.com>

**Date** Mar 11 at 10:04 AM

Good morning Kristy-

Do you have a number where I can reach Monica at for our 10 am call this morning?

Thanks, Paula

On Wednesday, March 11, 2026, 9:21 AM, paula fisher <paula10000@yahoo.com> wrote:

Show trimmed content

ORIGIN ID:FMYA (239) 989-8801
PAULA FISHER

8805 TAMIAMI TRL N
260
NAPLES, FL 34108
UNITED STATES US

SHIP DATE: 03NOV26
ACTWGT: 1.00 LB
CAD: 267700210/INET4535

BILL SENDER

TO **US DISTRICT COURT**
**CLERKS OFFICE**
**75 TED TURNER DRIVE**

**ATLANTA GA 30303**
(760) 473-1645 REF:
INV:
PO: DEPT:

58KJ7/80FA/484B

FedEx Express

E

J262026101501uv

WED - 04 NOV 5:00P
STANDARD OVERNIGHT

TRK# 0201 8796 5676 0915

30303

**XG QFEA**

GA-US ATL

After printing this label:
**CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH**
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.